556 F.Supp.2d 71 (2008)
Cesar QUINONES, Plaintiff
v.
UNITED STATES of America, Defendant.
Civil No. 07-1438 (JP).
United States District Court, D. Puerto Rico.
May 21, 2008.
*72 Ariel O. Caro-Pérez, Esq., Guaynabo, PR, for Plaintiff.
Isabel Muñoz-Acosta, Esq., U.S. Attorney's Office, District of P.R. Torre Chardon, San Juan, PR, for Defendant.

OPINION AND ORDER
JAIME PIERAS, JR., Senior District Judge.
Before the Court is a motion for summary judgment (No. 20) filed by Defendant United States of America ("United States"), an opposition thereto filed by Plaintiff César Quiñones ("Quiñones") (No. 23), a reply filed by Defendant United States (No. 28), and a surreply filed by Plaintiff (No. 31).
Plaintiff Quinones brought the instant case under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. Sec. 2671, et seq., against the United States for an alleged misdiagnosis dating back to 1968, when the United States Veterans' Administration Hospital diagnosed Plaintiff with Schizophrenic Reaction Undifferentiated Type ("schizophrenia"). Plaintiff alleges that he was treated for schizophrenia until August of 2006, when he requested a copy of his medical records and determined that his mental condition was not in fact schizophrenia, but Post Traumatic Stress Disorder ("PTSD") and depression. Plaintiff alleges that as a result of being treated for the wrong condition, he has suffered physical damages, a deterioration of his mental condition, and negative social stigma.
Defendant United States moves for summary judgment on the basis of untimeliness. Defendant argues that although Plaintiffs medical record includes a diagnosis of schizophrenia in the 1960s, said record clearly indicates that, as early as 1983, Plaintiffs treating physicians acknowledged that he presented signs and symptoms of PTSD, and that Plaintiff was so informed. Further, Plaintiff was not thereafter treated for schizophrenia, and it was only mentioned in his medical records as a diagnosis by history. As such, Defendant argues that Plaintiffs claim, which he did not present to the relevant agency until May 30, 2006, is time-barred.
For the reasons stated herein, Defendant United States' motion for summary judgment (No. 20) is GRANTED.

I. STANDARD FOR SUMMARY JUDMENT

Summary judgment serves to assess the proof to determine if there is a genuine need for trial. Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir.1990). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, viewed in the light most favorable to the nonmoving party, reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Zambrana-Marrero v. Suárez-Cruz, 172 F.3d 122, 125 (1st Cir.1999) (stating that summary judgment is appropriate when, after evaluating the record in the light most favorable to the non-moving party, the evidence "fails to yield a trial worthy issue as to some material fact"); Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir.1993); Canal Ins. Co. v. Benner, 980 F.2d 23, 25 (1st Cir.1992). The Supreme Court has stated that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty *73 Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In this way, a fact is material if, based on the substantive law at issue, it might affect the outcome of the case. See Mack v. Great Atl. and Pac. Tea Co., Inc., 871 F.2d 179, 181 (1st Cir.1989).
In a summary judgment motion, the movant bears the burden of "informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant meets this burden, the burden shifts to the opposing party who may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue of material fact for trial. See Anderson, 477 U.S. at 248, 106 S.Ct. 2505; Celotex, 477 U.S. at 324, 106 S.Ct. 2548; Goldman, 985 F.2d at 1116.

II. MATERIAL FACTS NOT IN GENINE ISSUE OR DISPUTE

The following facts were deemed uncontested by the parties hereto at the Initial Scheduling Conference held on November 6, 2007.
1. Plaintiff Quinones was a medic in the Vietnam War for two years and four months in the B Company, 9th Medical Battalion, 9th Infantry Division.
2. As a consequence of his participation in the war, Plaintiff experienced mental and emotional distress that required medical attention.
3. Around 1968, Plaintiff was hospitalized in a Veterans' Administration Hospital in San Juan, Puerto Rico, with a diagnostic of Schizophrenic Reaction Undifferentiated Type.
4. Plaintiff began to receive treatment at the San Juan Veterans Medical Center ("SJVAMC") in 1968.
5. In 1969, he was hospitalized again at the SJVAMC.
6. On December 19, 1986, Plaintiff was treated for aggressiveness, anxiety and belligerent and irritable conduct at the SJVAMC. He was assessed with chronic schizophrenic disorder.
7. On February 24, 1987, Plaintiff went to the SJVAMC with symptoms of anxiety and restlessness. The assessment was chronic neuropsychiatric condition.
8. On August 18, 1993, he was admitted to the SJVAMC and diagnosed with insomnia, episodes of memory loss, depression, and angry outbursts with fear of losing control.
9. The assessment of PTSD was made on September 23, 1993.
10. By March 5, 1994, the diagnosis of PTSD was maintained.
11. From 1994 to 1998, Plaintiff was not admitted to the SJVAMC.
12. On December 7, 1998, Plaintiff was brought to the Emergency Room at the SJVAMC with suicidal intentions.
13. Plaintiff was admitted to the Emergency Room with a diagnosis of PTSD and Major Depressive Disorder.
14. In April of 1999, Plaintiff went to the Miami Veterans Administration Medical Center with symptoms of both PTSD and major depression.
15. On May 25, 2000, Plaintiff was assessed with depressed affect and mood, and suicidal ideas.

*74 16. On November 13, 2000, the diagnoses of PTSD and Major Depression Disorder were maintained, and schizophrenia was mentioned as a diagnosis by history.
17. From 2002 to October 17, 2003, the findings and diagnosis remained the same.
18. There is no record of medical care at any Department of Veterans Affairs' facility from October 2003 until November 11, 2005, when Plaintiff went to the San Juan SJVAMC.
19. Around August 2006, when Plaintiff was involved in an administrative revision of his veteran's benefits status, he requested copy of his medical records, reports, studies and evaluations from different psychiatrists and psychologists of the Veterans' Administration.
20. The documentary evidence obtained by Plaintiff recognized that his mental condition was compatible with PTSD and major depression, and not with schizophrenia.
21. On July 9, 2007, Plaintiff was hospitalized at the SJVAMC for depression, anxiety and self-harm ideas.
The following facts were proposed by one of the parties, with sufficient supporting evidence, and either agreed to by the opposing party or not sufficiently opposed. Therefore, under Rule 56(e) of the Local Rules of the United States District Court for the District of Puerto Rico, the Court deems them admitted.
22. On October 20, 1983, Plaintiff was diagnosed with Post Traumatic Stress Syndrome, Chronic.
23. On June 2,1994, the Department of Veterans Affairs denied Plaintiffs request to correct his diagnosis of PTSD for an increase in serviceconnected disability.
24. On June 2002, Plaintiff was advised for the second time that his diagnosis of PTSD was not related to his military service.
25. On May 30, 2006, Plaintiff signed and sent his administrative claim pursuant to the FTCA, which was received by the Department of Veterans Affairs on June 5, 2006.
26. On August 15, 2007, the Department of Veterans Affairs denied Plaintiffs administrative claim.

III. ANALYSIS

Plaintiff Quinones' suit against the United States was brought under the FTCA. The FTCA waives the sovereign immunity of the United States to suits in tort. 28 U.S.C. § 1346(b). The prerequisite for liability under the FTCA is a negligent or wrongful act or omission of any employee of the United States Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b); see Santiago-Ramirez v. Secretary of Dep't of Defense, 984 F.2d 16, 17 (1st Cir.1993).
Defendant United States argues that Plaintiffs claims are barred for his failure to exhaust administrative remedies within the allotted time period. The FTCA necessitates exhaustion of administrative remedies prior to the initiation of a civil action. See 28 U.S.C. § 2675(a). Said exhaustion requires that a tort claim be presented in writing to the appropriate federal agency "within two years after such claim accrues." 28 U.S.C. § 2401(b). This procedure allows the agency involved to receive a claim, investigate, and perhaps settle the dispute before a suit is filed. 28 *75 U.S.C. § 2675; Santiago-Ramírez v. Secretary ofDep't of Defense, 984 F.2d at 16-17. Failure to comply with this requirement results in the district court being deprived of subject matter jurisdiction. See Skwira v. United States, 344 F.3d 64, 71 (1st Cir.2003).
Plaintiffs allegations and the uncontested facts clearly show that Quiñones was diagnosed and treated for PTSD in 1983. Thus, the crucial issue before the Court is whether Plaintiffs claim for the 1968 misdiagnosis of schizophrenia began to accrue in 1983, when he became aware of the alleged "correct" diagnosis of PTSD. The United States Supreme Court has held that a claim accrues under the FTCA when a plaintiff knows both the existence and the cause of his injury. United States v. Kubrick, 444 U.S. Ill, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); see also Callahan v. United States, 426 F.3d 444, 451 (1st Cir. 2005) (holding that "a claim accrues when the plaintiff discovers, or in the exercise of reasonable diligence discovers, or in the exercise of reasonable diligence should have discovered, the factual basis for the cause of action"). The accrual of a claim cannot be held until a plaintiff is aware that his injury was negligently inflicted. Kubrick, 444 U.S. at 123, 100 S.Ct. 352.
Plaintiff Quinones argues that, despite his knowledge of the PTSD diagnosis in 1983, the FTCA statute of limitations was tolled as per the "blameless ignorance" exception. Under said exception, if a plaintiffs blameless ignorance resulted in his inability to be aware of the basis for his cause of action, the statute of limitations did not begin to run until the "factual predicate for a malpractice claim" became apparent. Kubrick, 444 U.S. at 121, n. 8, 100 S.Ct. 352; see also Nicolazzo v. United States, 786 F.2d 454, 456 (1st Cir. 1986). Plaintiff Quiñones argues that he was blamelessly ignorant of any malpractice until October of 2004, when he received medical treatment in Panama under the care of a Dr. Canton. At that time, Plaintiff received and reviewed his medical records from the Veterans Affairs, and became aware of the possibility of malpractice.
The Court finds that the blameless ignorance exception does not apply to Plaintiff Quiñones' suit, or applies only to the years spanning from 1968 to 1983. Federal courts have "typically extended equitable relief only sparingly" and in situations "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period," or where "his adversary's misconduct so caused the filing deadline to pass." Irwin v. Department of Veterans Affairs, 498 U.S. 89, 95-96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). The Court holds that any blameless ignorance possessed by Quinones was extinguished in 1983, when he was made aware of the PTSD diagnosis. At that point, Quiñones was well-equipped, two decades after the original diagnosis of schizophrenia, to "diligently find out, within the statute of limitations period, whether the conduct [by Defendant United States] was negligent." Kubrick, 444 U.S. at 122, 100 S.Ct. 352; see also Nicolazzo, 786 F.2d at 455-56. Upon being made aware of the PTSD diagnosis, Quiñones was "no longer at the mercy of [the defendant]. There [were] others who [could] tell him if he [had] been wronged, and he [needed] only ask." Kubrick, 444 U.S. at 122, 100 S.Ct. 352; Nicolazzo, 786 F.2d at 455-56. To excuse a plaintiff from promptly seeking advice regarding a potential claim of negligence by postponing the accrual of his claim undermines the purpose of the FTCA's statute of limitations. Id. Such is the case here. When Quiñones was made aware in 1983 that he was afflicted with PTSD, not schizophrenia, *76 he was well-equipped at that point to seek alternate medical advice to determined whether he had been wronged. Plaintiff was likewise reminded of the PTSD diagnosis in 1994, when the Department of Veterans Affairs denied Plaintiff his request to correct his diagnosis of PTSD for an increase in service-connected disability pay. Nonetheless, Quiñones did not seek advice regarding any misdiagnosis until 2004, decades later. Accordingly, because Plaintiff Quiñones has known of the PTSD diagnosis since 1983, his claim began to accrue at that time, and is therefore time-barred. Summary judgment is entered for Defendant United States, and a final judgment shall follow.
IT IS SO ORDERED.